CALEB MARKER (SBN 269721)
  Email: caleb.marker@zimmreed.com
HANNAH B. FERNANDEZ (SBN 294155)
  Email: hannah.fernandez@zimmreed.com
BEN GUBERNICK (SBN 321883)
  Email: ben.gubernick@zimmreed.com
MADELEINE SHARP (SBN 307893)
  Email: madeleine.sharp@zimmreed.com
ZIMMERMAN REED LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATHANIEL WHITSON,<br><br>                    Plaintiff,<br><br>vs.<br><br>LYFT, INC., and DOES 1-20, inclusive,<br><br>                    Defendants. | CASE NO.: 3:18-cv-06539<br><br>**COMPLAINT**<br><br>1.  Violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*<br>2.  Willful Misclassification of Employee<br>3.  Failure to Pay Overtime Wages<br>4.  Failure to Pay Minimum Wages<br>5.  Wage Statement Violations<br>6.  Failure to Provide Meal and Rest Breaks<br>7.  Failure to Reimburse for Business Expenses<br>8.  Unlawful Deduction from Wages<br>9.  Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*<br>10. Violation of California Investigative Consumer Reporting Agencies Act, Cal. Civ. Code §1786, *et seq.*<br><br>(Jury Trial Demanded) |

Plaintiff Nathaniel Whitson ("Plaintiff"), by and through his undersigned attorneys, hereby brings this Complaint against Defendants, LYFT, INC., and DOES 1-20 ("Lyft" or "Defendants") and states as follows:

**INTRODUCTION**

1.     This is an action to recover lost wages for Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., the California Labor Code §§ 200-203, 221, 224, 226, 226.7, 226.8, 510, 1174, 1174.5, 1194, 1197, 1198, 2802, Industrial Welfare Commission Wage Order No. 4, 16, and M-2014, Business and Professions Code §17200 *et seq.*, and the California Investigative Consumer Reporting Agencies Act, Civil Code §1786 *et seq.* brought by Plaintiff.

2.     During all relevant times, Lyft employed Plaintiff as a driver to provide transportation services to users of Defendants' "Lyft" smartphone application.

3.     Plaintiff is currently employed as a Lyft driver and has not been properly compensated for the work he has performed.

4.     During all relevant times, Lyft misclassified Plaintiff as an independent contractor as opposed to an employee in willful violation of federal and California state law, causing financial loss and injury to Plaintiff.  In addition to failing to pay the required wages, Lyft required Plaintiff to unlawfully pay Lyft's business expenses such as fuel, automobile leases and rents, automobile maintenance, and other associated expenses.

5.     Plaintiff brings this action to recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which he may be entitled.

**JURISDICTION AND VENUE**

6.     This Complaint alleges causes of action under the laws of the United States, including the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

7.     This Court has personal jurisdiction over Defendants because they reside in and have their principal place of business in this District, and/or substantial parts of the unlawful conduct at issue took place in and caused harm in this District.

8.     Venue is proper in this District because the Defendants are subject to personal jurisdiction in this District, Defendants' headquarters and nerve center is located in this District, and

the unlawful conduct at issue occurred in this District.

## PARTIES

9.      Plaintiff Nathaniel Whitson is an adult resident of Ramona, California.

10.     Plaintiff currently works for Defendants as a driver in Southern California, providing transportation services to users of Defendants' "Lyft" phone application.

11.     Plaintiff began driving for Lyft on October 2, 2018. Since he started working for Lyft, Plaintiff has been misclassified as an independent contractor, and as a result, was not provided the wages and other benefits and rights due to him as an employee.

12.     Plaintiff has also made use of Lyft's Express Drive program, renting a car from a Lyft affiliate for one week in October 2018.

13.     On October 23, 2018, Plaintiff sent a timely arbitration opt-out letter to Lyft, which allows him to file this current action.

14.     Defendant Lyft, Inc. ("Lyft") is a Delaware corporation with its headquarters and primary place of business located in the City and County of San Francisco at 185 Berry Street, Suite 5000, San Francisco, CA 94107.

15.     Plaintiff does not know the true names and/or capacities, whether individual, partners, or corporate, of the Defendants sued herein as DOES 1-20, inclusive, and for that reason sues said Defendants under fictitious names and prays leave to amend the complaint to insert said true names and capacities in the appropriate paragraphs herein, when Plaintiff ascertains said true names and capacities. Plaintiff is informed and believes and thereon alleges that said Defendants and each of them are responsible in whole or in part for Plaintiff's damages as alleged herein.

## GENERAL ALLEGATIONS

16.     Lyft provides prearranged transportation services to members of the general public who download its eponymous smartphone application.

17.     Defendants misclassified Plaintiff as an independent contractor, when in fact he was an employee of Defendants.

18.     Lyft describes itself as a "Charter-Party Carrier" on its SI-550 form filed with the California Secretary of State on November 21, 2017.

19.     Previously, Lyft described itself as a "Transportation Network Company" ("TNC") on its SI-550 form filed with the California Secretary of State on September 13, 2017.

20.     Indeed, Lyft applied for, obtained, and currently holds a license as a TNC from the California Public Utilities Commission (TCP Permit No. 32513).

21.     Pursuant to Public Utilities Code §5431(c) a TNC is "an organization, including, but not limited to, a corporation, limited liability company, partnership, sole proprietor, or any other entity, operating in California *that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle.*"

22.     Plaintiff is an integral part of Lyft's business, driving passengers who purchased prearranged transportation services from Lyft.  *See e.g. O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1142 (N.D. Cal. 2015) (discussing Lyft's competitor, Uber, noting that "Uber not only depends on drivers' provision of transportation services to obtain revenue, it exercises significant control over the amount of any revenue it earns: Uber sets the fares it charges riders unilaterally."). Without Plaintiff and other drivers who have the same role and perform the same functions that are all within the usual course of Lyft's business, Lyft could not operate and would not exist.

23.     On April 30, 2018, the California Supreme Court issued its opinion in *Dynamex Operations W. v. Superior Court*, 416 P.3d 1 (Cal. 2018), *reh'g denied* (June 20, 2018).

24.     In *Dynamex*, the California Supreme Court held that putative employers have the burden to prove that workers are not employees under its newly-adopted "ABC" test:

> As a consequence, we conclude it is appropriate, and most consistent with the history and purpose of the suffer or permit to work standard in California's wage orders, to interpret that standard as: (1) placing the burden on the hiring entity to establish that the worker is an independent contractor who was not intended to be included within the wage order's coverage; and (2) requiring the hiring entity, in order to meet this burden, to establish *each* of the three factors embodied in the ABC test—namely (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged

in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex Operations W. v. Superior Court*, 416 P.3d at 7 (Cal. 2018), *reh'g denied* (June 20, 2018).

25.     Defendants plainly fail each of the three prongs of the ABC test.

26.     Defendants fail the "A" prong because they subject drivers such as Plaintiff to rules, regulations, and other forms of significant control. Lyft dictates almost every aspect of how Plaintiff provides transportation services provided to riders, unlike the normal practice for an independent contractor. Lyft unilaterally decides the price that Lyft charges for the driver's services, collects all money from riders, sets the compensation earned by the drivers, decides which rides are offered to drivers, and unilaterally chooses how to resolve customer complaints.

27.     Defendants also fail the "B" prong of the ABC test as Plaintiff performs work – operating vehicles and transporting Lyft's customers – that is within the usual course of Lyft's business.

28.     U.S. District Judge Vince Chhabria of the Northern District of California has already determined that Lyft provides transportation services:

> As a threshold matter, Lyft tepidly asserts there is no need to decide how to classify the drivers, because they don't perform services for Lyft in the first place. Under this theory, Lyft drivers perform services only for their riders, while Lyft is an uninterested bystander of sorts, merely furnishing a platform that allows drivers and riders to connect, analogous perhaps to a company like eBay. But that is obviously wrong. Lyft concerns itself with far more than simply connecting random users of its platform. It markets itself to customers as an on-demand ride service, and it actively seeks out those customers. *See* Hartman Depo. at 64:17–65:24 (describing Lyft's marketing efforts aimed at attracting riders). It gives drivers detailed instructions about how to conduct themselves. Notably, Lyft's own drivers' guide and FAQs state that drivers are "*driving for Lyft.*" Carlson Decl., Ex. U, Ex. Z at LYFT000039. **Therefore, the argument that Lyft is merely a platform, and that drivers perform no service for Lyft, is not a serious one.** *See Yellow Cab v. Workers' Comp. Appeals Bd.,* 277 Cal.Rptr. 434, 437, 226 Cal.App.3d 1288 (1991) (noting that, contrary to Yellow Cab's insistence that it merely served as a lessor of taxicabs, Yellow "cultivated the passenger market by soliciting riders, process[ed] requests for service through a dispatching system," and instructed the drivers in "service" and "courtesy"). *Cf. Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry,* California Public Utilities Commission, Decision 13–09–045, pp. 63–68 (Sept. 19, 2013) (concluding that companies such as Lyft are engaged in the business of providing passenger transportation for compensation).

*Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015) (emphasis added).

29. "For example, the work performed by the drivers is "wholly integrated" into Lyft's business—after all, Lyft could not exist without its drivers—and "[t]he [riders] are [Lyft's] customers, not the drivers' customers[.]"" *Id*. at 1079–80, quoting *Estrada v. FedEx Ground Package System, Inc.,* 64 Cal. Rptr. 3d 327, 334, 336 (Cal. Ct. App. 2007).

30. Finally, Defendants fail the "C" prong because drivers such as Plaintiff are not customarily engaged in an independently established trade, occupation, or business. Plaintiff and other drivers invest minimal or no capital in, and take no steps to establish, independent businesses. They are simply using their personal vehicles to transport Lyft's customers. For most drivers, all that is required to start a "business" with Lyft is to have a driver's license and pass a background check. Plaintiff and most other drivers make no steps to establish a separate business, do not have access to customer lists, and have no business license.

31. Transportation industry drivers such as Plaintiff are generally classified as employees. *See e.g. Linton v. Desoto Cab Co., Inc.*, 223 Cal. Rptr. 3d 761 (Cal. Ct. App. 2017), *reh'g denied* (Nov. 2, 2017), *review denied* (Jan. 10, 2018).

32. Lyft (similar to its primary competitor, Uber) has engaged in a ruse to deny drivers like Plaintiff their rights as employees, to the drivers' financial detriment and Lyft's financial benefit.

33. Notably, BMW recently launched a new ridesharing company named ReachNow which correctly classifies every driver as an employee and pays them $14.25 per hour. (*See e.g.*, Mateen Dalal, BMW Ride Hailing Service In Seattle To Compete With Uber, Lyft, Free Automotive News, July 19, 2018, http://freeautomotivenews.com/bmw-service-compete-uber-lyft/.)

34. Plaintiff is employed by Defendants and is paid, in part, based on the time and distance of each trip he makes.

35. Defendants own and operate the Lyft smartphone application, which allows users of the application to submit a trip request. This request is then sent out to Lyft drivers in the area to accept the ride request. After accepting a request, the driver then drives to meet a rider at a designated pick-up point and transport the rider to a designated drop-off point.

36. Plaintiff operates no distinct business of his own, has no relevant specialized skills,

and is supervised and controlled by Defendants through a myriad of rules, policies, a pricing system, a rating system, and regional managers.

37.     Under federal and California law, Plaintiff should have been classified as an employee, as he provides a service that benefits Defendants; driving for Lyft requires no skills or experience beyond a commercial driver's license, vehicle, and insurance; Plaintiff's tenure is for an indefinite period of time; Defendants sometimes rent drivers the smartphones that are necessary to communicate with customers; Defendants prohibit Plaintiff from setting rates of pay for his services; Defendants maintain requirements for customer service and can terminate Plaintiff based on low customer ratings; and Defendants retain the right to terminate Plaintiff for any reason, without explanation, at any time.

38.     Lyft communicates directly with customers and resolves all customer support issues directly when a customer's expectations are not met during a ride.  Based on customer feedback and ratings, drivers such as Plaintiff may be terminated at Lyft's sole discretion.

39.     Defendants maintain records of the hours Plaintiff actually worked, including times when they were waiting for riders but were not paid, in violation of California law.

40.     Defendants also failed to pay full wages when due, pay full wages on discharge, provide accurate wage stubs, and pay minimum wages as required by law.

41.     Defendants further failed to pay for Plaintiff's overtime labor, business expenses, and payroll taxes.

42.     Plaintiff seeks compensation for all hours worked; all penalties, liquidated damages, and other damages permitted by law; restitution and or disgorgement of all benefits obtained by Defendants from their unlawful business practices; injunctive and declaratory relief; punitive damages, all forms of equitable relief permitted by law; and reasonable attorneys' fees and costs.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")

43.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

44.     Defendants violated 29 U.S.C. § 206(a) by failing to pay Plaintiff the applicable

1   minimum wage for every compensable hour of labor he performed.

2        45.    The FLSA violations set out above resulted from the Defendants' failure to reimburse

3   Plaintiff for time spent traveling to pick up Lyft's riders and to return from dropping off Lyft riders

4   and by paying Plaintiff a wage that fell short of the minimum wage required by law, and failing to

5   compensate Plaintiff for overtime.

6        46.    Defendants' failure to pay Plaintiff his federally mandated minimum wage was willful

7   violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

8        47.    As a consequence of Defendants' violations of the FLSA, Plaintiff is entitled to

9   recover his unpaid minimum and overtime wages, plus an additional amount in liquidated damages,

10  costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

11  **COUNT II**

12  **WILLFUL MISCLASSIFICATION IN VIOLATION OF LABOR CODE § 226.8, *et seq.***

13       48.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

14       49.    Defendants have misclassified and continue to misclassify Plaintiff as an independent

15  contractor as opposed to an employee in violation of California Labor Code § 226.8.

16       50.    As a result, Plaintiff seeks statutory damages and penalties for the violation to

17  California Civil Code § 226.8 *et seq.*

18  **COUNT III**

19  **FAILURE TO PAY OVERTIME WAGES**

20       51.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

21       52.    During the relevant employment period, Defendants were required to pay all non-

22  exempt employees overtime compensation for all hours worked over 8 hours per day and/or over 40

23  hours per week. *See, e.g.* California Labor Code Sections 510, 1194, and 1197, as well as Sections

24  200, *et seq.*, 1174, 1174.5. Defendants failed to do so.

25       53.    Plaintiff is a non-exempt employee.

26       54.    Defendants' conduct described herein violates Industrial Welfare Commission Order

27  No. 4-2001 (Wage Order No. 4-2001) of the California Industrial Welfare Commission and the

28

California Labor Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, 1174.5.

55.     As a result of Defendants' conduct, Plaintiff has suffered damages and was deprived of overtime wages. Plaintiff seeks these wages, attorneys' fees and costs, and interest under Cal. Labor Code § 1194.

### COUNT IV

### FAILURE TO PAY MINIMUM WAGES

56.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

57.     During the relevant employment period, Defendants required Plaintiff to work at rates that fell below the mandated minimum wage. *See, e.g.* IWC Minimum Wage Order No. M-2014; Labor Code § 1194.

58.     Plaintiff was not exempt from the state's Minimum Wage Orders as an employee. Defendants was aware of its obligation to pay minimum wages but failed to do so.

59.     As a result of Defendants' conduct, Plaintiff has damages in the form of lost wages. Plaintiff seeks these wages, attorneys' fees and costs, and interest under Cal. Labor Code § 1194.

### COUNT V

### WAGE STATEMENT VIOLATIONS

60.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

61.     Cal. Labor Code § 226(a) and IWC Wage Order No. 16, § 6(B) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee. During the relevant employment period, Defendants have failed to maintain records of hours worked by Plaintiff as required under Labor Code Section 1174(d). Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

62. Defendants knowingly and intentionally failed to furnish Plaintiff with timely, itemized statements showing the total hours worked, as required by Cal. Labor Code § 226(a) and IWC Wage Order No. 16, § 7(B).

63. Plaintiff suffered damages from Defendants' failure to provide accurate statements. As a result, Defendants are liable to Plaintiff for the amounts provided by Cal. Labor Code § 226(b) and for penalties and attorneys' fees.

**COUNT VI**

**FAILURE TO PROVIDE MEAL AND REST BREAKS**

64. Plaintiff re-alleges and incorporates all previous paragraphs herein.

65. During the relevant employment period, Plaintiff was compelled to work longer than 8 hours a day and more than 40 hours a week and were deprived of rest and meal breaks, in violation of Cal. Labor Code §226.7.

66. Plaintiff was not an "exempt" employee under the California Labor Code.

67. Defendants knowingly and intentionally failed to furnish Plaintiff with compensation for rest and meal breaks.

68. As a result of Defendants' conduct, Plaintiff seeks compensation and penalties for all missed breaks under Cal. Labor Code §226.7, along with appropriate damages, injunctive relief and attorneys' fees and costs.

**COUNT VII**

**FAILURE TO REIMBURSE FOR BUSINESS EXPENSES**

69. Plaintiff re-alleges and incorporates all previous paragraphs herein.

70. Cal. Labor Code §2802 provides that an employer must reimburse employees for all reasonable and necessary expenses incurred in carrying out the lawful directions of the employer.

71. During the relevant employment period, Plaintiff incurred work related expenses, such as costs of purchase and lease of Plaintiff's vehicles; maintenance, fuel, insurance and other vehicle operating costs; cell phone expenses, such as text messaging and electronic message service costs; GPS costs; costs of tools and equipment necessary to perform services; and costs of vehicle

decals or other markings. Plaintiff incurred these expenses as a direct result performing his job duties for Defendants.

72.     Defendants failed to reimburse Plaintiff for the incurred necessary expenses.

73.     As a result of Defendants' conduct, Plaintiff has suffered damages, including prejudgment interest under Cal. Labor Code §2802(b) and costs and attorneys' fees under Cal. Labor Code §2802(c).

## COUNT VIII

### UNLAWFUL DEDUCTION FROM WAGES

74.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

75.     Cal. Labor Code §§221 and 224 provide that an employer may only withhold amounts from an employee's wages when (1) required or empowered to do so by state or federal law; (2) when a deduction is expressly authorized in writing by the employee to cover insurance premiums, benefit plan contributions, or other deductions not amounting to a rebate on the employee's wages; or (3) when a deduction to cover health, welfare or pension contributions is expressly authorized by a wage or collective bargaining agreement.

76.     During the relevant employment period, Defendants unlawfully made deductions from Plaintiff's compensation to cover Defendants' ordinary business expenses, including but not limited to, the costs of equipment and tools necessary for rendering services and claims for property damage.

77.     Defendants are liable to Plaintiff pursuant to Cal. Labor Code §§221 and 224 for the withheld compensation.

78.     As a result of Defendants' conduct, Plaintiff has suffered damages and seek penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§218.5 and 1194.

## COUNT IX

### VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*

79.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

80.     Cal. Bus. & Prof. Code § 17204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Plaintiff seeks compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to Plaintiff. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

81.     The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable, and/or fraudulent business acts or practices which injured Plaintiff and caused him loss of money.

82.     The unlawful, unfair, unconscionable, and/or fraudulent business acts or practices adopted by Defendants, which injured Plaintiff and caused him loss of money, were conducted by Defendants in material part in the state of California.

83.     Defendants adopted unlawful business and employment policies and conspired to engage in the above-described unlawful, unfair, unconscionable, and/or fraudulent business acts and practices nationwide, and that conduct harmed Plaintiff and caused him injury and financial loss. As such, the UCL applies to all such transactions and dealings.

84.     Defendants have engaged and continue to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiff overtime compensation pursuant to Cal. Labor Code §§ 510 and 1194; (b) failing to furnish accurate wage statements pursuant to Cal. Labor Code § 226; and (c) failing to maintain accurate timesheet and payroll records pursuant to 29 C.F.R § 516.1.

85.     By failing to pay its employees overtime wages in violation of the California Labor Code, Defendants violated the UCL.

86.     The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*. Defendants' acts and practices described herein offend established public policies, including

those set forth in applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

87.     The unfair business practices set forth above have and continue to injure Plaintiff and the general public and cause injury and the loss of money, as described further within. These violations have unjustly enriched Defendants at the expense of Plaintiff. As a result, Plaintiff and the general public are entitled to restitution and an injunction.

88.     Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants by means of the unfair practices complained of herein.

89.     The acts complained of herein occurred within the last four years preceding the filing of the complaint in this action.

90.     Plaintiff is informed and believes and on that basis alleges that at all times herein mentioned Defendants have engaged in unlawful, deceptive and unfair business practices, as proscribed by California Business and Professions Code § 17200 *et seq*., including those set forth herein above, thereby depriving Plaintiff and other members of the general public the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

91.     The conduct of Defendants and its agents, employees, managerial employees as described herein was oppressive, fraudulent, malicious, and done in conscious disregard of Plaintiff's rights.

92.     Such a pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action for the unpaid balance of the full amount of wages owing, including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of California Labor Code.

93.     Such a pattern, practice, and uniform administration of an unlawful, deceptive, and unfair business practice as described herein creates an entitlement to recovery by Plaintiff in a civil action for damages and wages owed.

## COUNT X

## VIOLATION OF CAL. CIV. CODE § 1786, *et seq.*

94.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

95.     The California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code Section 1786 *et seq.* requires employers to provide "clear and conspicuous" notice of the following in a written document that discloses: (1) that it may procure a consumer background report for employment purposes; (2) the permissible purpose of the report; (3) that the disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living; (4) identification of the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation; (5) notification of the nature and scope of the investigation requested, including a summary of the provisions of Cal. Civ. Code § 1786.22.

96.     Defendants failed to provide this notice to Plaintiff.

97.     Defendants also failed to obtain written authorization from Plaintiff prior to obtaining a consumer background report for employment purposes.

98.     Defendants further failed to provide, by means of a box to check on a written form, the opportunity to request and receive a copy of the consumer background report obtained for Plaintiff.

99.     As a result, Plaintiff seeks statutory and punitive damages for the violation to California Civil Code § 1786 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.      A declaratory judgment that the policies and practices complained of herein are unlawful under the laws of California;

B.  An award of appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not limited to an order enjoining Defendants from continuing their unlawful policies and practices;

C.  An award of damages, statutory penalties, and restitution to be paid by Defendants according to proof;

D.  An award of general damages according to proof;

E.  An award to Plaintiff for unpaid wages owed to him pursuant to the FLSA;

F.  An award of appropriate damages in an amount to be proven at trial for Defendants' violation of ICRAA, but in no case less than $10,000 per violation;

G.  An award of punitive damages;

H.  An award of reasonable attorneys' fees and costs incurred by Plaintiff in filing this action pursuant to Labor Code § 218.5 and 1194, Code of Civil Procedure § 1021.5, and other applicable laws;

I.  An award of pre- and post-judgment interest to Plaintiff on these damages; and

J.  Such further relief as this court deems appropriate.

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, by and through his Attorneys, and hereby demands a trial by jury on all issues triable by jury.

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: October 26, 2018          By:     /s/Caleb Marker
                                         Caleb Marker
                                         Hannah B. Fernandez
                                         Ben Gubernick
                                         Madeleine Sharp
                                         2381 Rosecrans Ave., Suite 328
                                         Manhattan Beach, CA 90245

                                         *Attorneys for Plaintiff*