# EXHIBIT B

Jahan C. Sagafi (Cal. Bar No. 227887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar. No. 310594)
imattes@outtengolden.com
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Michael J. Scimone
(*pro hac vice application forthcoming*)
mscimone@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 231-0037

*Counsel for Plaintiffs, Proposed Class Members, and Aggrieved Employees*

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**10/05/2018**
Clerk of the Court
BY: ANNA TORRES
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
## UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| B. Olson and D. Melnicoe, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | Case No. CGC-18-566788<br><br>**SECOND AMENDED CLASS ACTION AND PAGA COMPLAINT FOR VIOLATIONS OF CALIFORNIA LABOR CODE AND UNFAIR COMPETITION LAW;**<br><br>**CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Melnicoe alleges, on behalf of himself and all those similarly situated, and Plaintiff Olson alleges, in his capacity as an Aggrieved Employee under the Private Attorneys General Act of 2004, Lab. Code § 2699 *et seq.* ("PAGA"), as follows:

## SUMMARY OF CLAIMS

1. Plaintiffs are individuals who have worked as drivers for Lyft, Inc. ("Lyft"). Plaintiff Melnicoe brings this action as a class action on behalf of himself and all others similarly situated (the "California Class"). Plaintiff Olson brings this action as a PAGA action on behalf of himself and other Aggrieved Employees of Lyft. For both the class action component and the PAGA action component, the covered individuals are defined as those who have worked as drivers for Lyft ("Lyft Drivers").

2. Plaintiffs allege that Lyft has violated and continues to violate the California Labor Code protections applicable to Lyft Drivers because they should be classified as employees rather than independent contractors. These violations include the failure to: (1) reimburse Lyft Drivers for their expenses, (2) pay overtime, (3) pay minimum wage, (4) provide itemized wage statements, (5) keep accurate payroll records, and (6) provide meal and rest breaks.

3. Plaintiff Melnicoe brings his claims under the California Labor Code and Unfair Competition Law ("UCL") on behalf of all Lyft Drivers who worked in California from May 22, 2014 through the date of the final disposition of this action ("California Class").

4. Plaintiff Olson brings his PAGA claims on behalf of all Lyft Drivers who worked in California from May 11, 2015 through the date of the final disposition of this action ("Aggrieved Employees").

## JURISDICTION AND VENUE

5. The Court has jurisdiction over Plaintiffs' claims under the Cal. Labor Code and Bus. & Prof. Code.

6. The Court has personal jurisdiction over this matter because Lyft maintains its headquarters in San Francisco, California, conducts substantial business activity in this city and state, and engaged in the unlawful acts described herein in this city and state.

7. Venue is proper in this county under California Code of Civil Procedure § 395.5 because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this county.

8. Notice of the PAGA claims asserted herein was provided to the California Labor & Workforce Development Agency ("LWDA") and to Lyft by Lyft Drivers Alex Zamora and Rayshon Clark on May 11, 2016. A second notice was provided by Plaintiff Olson to the LWDA and to Lyft on May 24, 2018 with the filing of the complaint in this case. The LWDA has not taken any action with regard to either notice, including providing notice of an intent to pursue the claims.

## THE PARTIES

9. Defendant Lyft, Inc. is a Delaware corporation with its corporate headquarters and primary place of business in San Francisco, California, and operations in many other states in the United States. The practices described in this Complaint were designed at, emanated from, and carried out by agents in Lyft's San Francisco, California headquarters.

10. Plaintiff Brandon Olson is a resident of Oakland, California. Olson has worked as a Lyft Driver from approximately October 2014 to the present in the San Francisco Bay Area. For significant periods of his time as a Lyft Driver, Olson worked full-time, driving approximately 50 to 70 hours a week and often more than 8 hours in a day. He estimates that, during these periods, he drove approximately 1,000-2,000 miles a week for Lyft's benefit. Olson has also been required to spend a significant amount of his own money in order to drive for Lyft, including (i) approximately $200 per week on gasoline, (ii) approximately $400 per month on routine car maintenance, such as oil changes and car washes, (iii) approximately $4,000-$5,000 per year on average for major car repairs, (iv) approximately $490 per month to finance the cost of his vehicle, and (v) approximately $179 per month for car insurance.

11. Plaintiff David Melnicoe is a resident of San Diego, California. Melnicoe worked as a Lyft Driver from approximately July 2015 to December 2017 in the San Diego area. For certain weeks during his time as a Lyft Driver, Melnicoe drove full-time, including for more than 8 hours in a day for Lyft's benefit. He estimates that, during these periods, he drove approximately 500 miles a week for

1  Lyft's benefit.  Melnicoe has also been required to spend a significant amount of his own money in
2  order to drive for Lyft, including approximately $25 per week on gasoline, (ii) approximately $50 per
3  month on routine car maintenance, such as oil changes and car washes, and (iii) other costs relating to
4  his vehicle.

## FACTUAL BACKGROUND

### A.  Lyft Drivers Satisfy the Legal Test for Employee Status.

12.  Lyft is a "ridesharing"[1] business that originated in San Francisco, California, in 2012.

13.  <u>Lyft Drivers are central to Lyft's business.</u>  Lyft Drivers are the face of Lyft.  Lyft Drivers provide the service that Lyft sells to the public.  The work that Lyft Drivers perform is in the usual course of Lyft's business – indeed, providing driving services *is* Lyft's business.  While Lyft's lawyers have described the business as a "[p]latform" that "connects riders who need transportation to drivers willing to provide it," *Zamora v. Lyft, Inc.*, ECF No. 64 at 1:20-21 (N.D. Cal.), this characterization obscures the reality of the work performed by Lyft Drivers for Lyft and its customers (the riders).  Lyft earns money by providing its customers with a ride from point A to point B – a service that is wholly dependent on Lyft Drivers.

14.  As part of Lyft's requirements, Lyft Drivers receive training in how to interact with riders, as well as Lyft's expectations and practices.  Lyft Drivers must pass criminal background and driving record checks, and their right to provide driving services can be terminated for any of a variety of rules that Lyft imposes by contract.

15.  <u>Lyft Drivers lack business autonomy.</u>  Lyft Drivers are not engaged in an independently established business.  Lyft Drivers cannot provide their transportation services without the Lyft App.  Lyft Drivers are dependent on Lyft to identify riders for them, may not hire employees to assist them in

---

[1] Lyft provides Riders with transportation by connecting them with Lyft Drivers through a mobile phone application (the "Lyft App").  The Driver then transports the Rider, and the Rider pays Lyft for the service with a credit card via the Lyft App.  The Lyft App sets the fare to be paid by the Rider.  A Rider may tip the Driver by designating an amount in the Lyft App.  On information and belief, Lyft then pays the Driver approximately 80% of the ride fare plus 100% of any added tip, while Lyft keeps approximately 20% of the fare for itself.

providing services for Lyft, and do not need to possess any particular skills other than those required to obtain a driver's license.

16. By working for Lyft, Lyft Drivers have not independently made the decision to go into business for themselves. Lyft has unilaterally determined that its Drivers are independent contractors while precluding them from taking the usual steps toward promoting and establishing an independent business, such as forming business relationships with Lyft customers or otherwise promoting their services to the public.

17. Lyft also prohibits Lyft Drivers from setting or in any way affecting the rates of pay for their own services. Lyft prohibits Lyft Drivers from communicating with Riders about future ride services and from exceeding Lyft's specified limit on the distance allowed for each ride.

18. Lyft Drivers may not use a car that is more than 12 years old and must pass automotive inspections as dictated by Lyft. Lyft Drivers are rewarded for driving cars of a certain age and punished for driving cars that are older.

19. Lyft Drivers must carry their own insurance, but Lyft also provides Lyft Drivers with liability and uninsured/underinsured coverage while they are logged into the Lyft App and driving riders.

20. Lyft is solely responsible for recording Lyft Drivers' rides, including the time and distance for each ride, the ride fare and added Lyft fees, any tips, and for compiling Lyft Drivers' rates of pay for each ride.

21. <u>Lyft controls the terms of employment.</u> Lyft maintains uniform policies and terms of service with which all Lyft Drivers must comply. Once Lyft Drivers pass Lyft's initial requirements, they work for Lyft for an indefinite period of time. However, Lyft may shut down Lyft Drivers' access to the Lyft App for myriad reasons, thus preventing them from obtaining and responding to ride requests.

### B. Lyft Violates Lyft Drivers' Rights Under the California Labor Code

22. <u>Expense reimbursement.</u>  Lyft Driver expenses include mileage costs; car insurance; cell phone service to perform driving services, receive driving requests, and maintain required email and/or text message contact with Lyft; car cleaning and repair to comply with Lyft requirements; and water, snacks, and/or other supplies for riders, among other expenses.  Lyft does not reimburse Lyft Drivers for their work-related expenses.

23. <u>Overtime and minimum wage.</u>  Lyft does not pay Lyft Drivers overtime for hours worked over eight in a day or over 40 hours in a week.  Furthermore, although Lyft suffers or permits Lyft Drivers to log on to the Lyft App and make themselves available to pick up rides, Lyft fails to pay them the minimum wage for all hours actually worked in this way and instead limits their pay to a piece rate for each ride.  Even limiting the calculation of minimum wage to the hours a Lyft Driver is engaged in providing a ride, Lyft fails to pay Lyft Drivers a minimum wage for all hours worked.

24. <u>Wage statements and time records.</u>  Lyft's wage statements do not clearly itemize earnings in such a way that Lyft Drivers can readily identify whether they received all pay for which they are eligible under the law, such as hours worked, overtime, and minimum wages.  Payroll records similarly fail to track all pay accurately.

25. <u>Meal and rest breaks.</u>  For Lyft Drivers who work five or more hours in a day, Lyft does not provide a 30-minute meal break during which they are relieved from all work duties and are not logged into the Lyft App and accepting rides.  Likewise, Lyft does not provide a 10-minute rest break, similarly relieved of all work duties, for each shift of at least 3.5 hours.  In addition, pursuant to Lyft's policy of classifying Lyft Drivers as independent contractors, Lyft lacks a meal or rest break policy under which Lyft Drivers are informed of the right to take appropriate meal and rest breaks.  Lyft could structure its App to alert Lyft Drivers that it is time to take a meal or rest break of the appropriate length, and facilitate their logging off the App for the appropriate amount of time.  But Lyft does not do so.  Moreover, Lyft's policies and practices incentivize Lyft Drivers to miss, cut short, or interrupt their breaks, in violation of the applicable Wage Order and Labor Code.

26.  **Willfulness.** Lyft has continued to classify Plaintiff and Lyft Drivers as independent contractors notwithstanding that its classification policy has been the subject of several lawsuits, at least one court decision concluding that a jury could reasonably find that Lyft Drivers are employees under California law, and the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, No. S222732, 2018 WL 1999120 (Apr. 30, 2018). Lyft's refusal to reclassify Lyft Drivers as employees despite the substantial risk that its policy is unlawful is knowing and voluntary, and constitutes willful misclassification.

## CLASS ACTION ALLEGATIONS

27.  Plaintiff Melnicoe brings his Claims for Relief for violations of the California Labor Code and California's Unfair Competition Law pursuant to Cal. Code of Civ. Proc. § 382, on behalf of all California Class members, defined above.

28.  **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Melnicoe is informed and believes, and on that basis alleges, that during the class period Lyft has employed thousands of persons who satisfy the definition of the Class.

29.  **Ascertainability.** The identity of Class members is ascertainable through Lyft's records or by public notice.

30.  **Community of Interest.**

    a.  **Typicality.** Melnicoe's claims are typical of Class members' claims. Melnicoe, like other Class members, as subjected to Lyft's policies and practices that violated California law. Melnicoe's job duties and claims were and are typical of those of the Class members.

    b.  **Adequacy.** Melnicoe will fairly and adequately represent and protect the interests of the Class members. Melnicoe's counsel are experienced in employment class actions and will fairly and adequately represent and protect the interests of the Class members.

    c.  **Predominance.** Common questions of law and fact exist as to members of the Class that predominate over any individualized questions, including the following:

- Whether Lyft Drivers are employees or independent contractors;
- Whether Lyft failed to reimburse Lyft Drivers for work-related expenses;
- Whether Lyft failed to pay Lyft Drivers overtime;

- Whether Lyft failed to pay Lyft Drivers the minimum wage for all hours worked;
- Whether Lyft failed to provide itemized wage statements;
- Whether Lyft kept accurate payroll records;
- Whether Lyft failed to provide meal and rest breaks;
- Whether Lyft's policies and practices violated the UCL, California Labor Code §§ 218.5, 218.6, 226, 226.3, 226.7, 226.8, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2810.5, and California Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order 9");
- Whether Lyft's classification of Lyft Drivers as independent contractors was willful; and
- The proper measure of damages sustained by members of the Class.

31. <u>Superiority</u>. Class treatment would benefit the courts and class members. Certification of the class would provide substantial benefits to the courts and Class members. The damages suffered by individual Class members are relatively small compared to the significant expense and burden of individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Lyft's practices.

**FIRST CLAIM FOR RELIEF**
**(Unfair Business Practices, Cal. Bus. & Prof. Code § 17200,**
**Brought by Plaintiff Melnicoe on Behalf of Himself and the Class)**

32. Plaintiff Melnicoe, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

33. At all relevant times, Lyft has been an employer, and Melnicoe and Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

34. California Labor Code § 226.8 makes it unlawful for employers to willfully misclassify workers as independent contractors, and to charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described would have violated the law if the individual had not been misclassified.

35. California Labor Code § 2802 provides for the reimbursement of Melnicoe's and Class members' expenses incurred while carrying out their employment or to comply with Lyft requirements.

36. California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9 protect Melnicoe's and Class members' right to earn the minimum wage and provide for damages and punishment for violations of that right.

37. California Labor Code §§ 510, 1194, 1198, and Wage Order 9 provide for compensation with overtime pay for time worked over eight hours in a day or 40 hours in a week.

38. California Labor Code §§ 226, 353, and 1174 provide requirements for properly itemized wage statements and payroll recordkeeping.

39. California Labor Code §§ 226.7, 512, and Wage Order 9 provide for a 30-minute meal break for employees who work five hours or more in a day and for 10-minute breaks for every three and one-half hours worked.

40. California Labor Code § 2810.5 requires employers to provide written notice at the time of hire containing the rate or rates of pay, including overtime rate, the basis for pay (whether by the hour, piece, etc.), as well as other information.

41. Lyft's conduct, as alleged, violates the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, which prohibits, *inter alia*, unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices. Melnicoe brings this cause of action individually and as a representative of all others subject to Lyft's unlawful acts and practices.

42. By failing to pay Lyft Drivers' work-related expenses, overtime, and minimum wage; failing to provide meal and rest breaks; and violating requirements for wage statements, notice, and payroll records, Lyft committed unlawful and unfair acts as defined by the UCL.

   a. Lyft's practices, as alleged, constitute unlawful acts because such acts violate the California Labor Code sections detailed above.

   b. Lyft's practices, as alleged, also constitute unfair acts because such acts are contrary to public policy.

43. As a result of these unlawful and/or unfair business practices, Lyft reaped unfair benefits and illegal profits at the expense of Melnicoe and Class members. Lyft must disgorge these ill-gotten gains and restore to Melnicoe and Class members all expense reimbursement, overtime, minimum

wages, and other wages owed. Lyft's actions deprived Melnicoe and each member of the Class of their expenses and full pay; consequently, Melnicoe and members of the Class have lost money and property, and they are entitled to restitution in the amount of their expenses and pay that Lyft withheld. Pursuant to California Code of Civil Procedure § 1021.5, Melnicoe and Class members are entitled to payment of their attorneys' fees, costs, and expenses incurred in bringing this action.

**SECOND CLAIM FOR RELIEF**
**(Expense Reimbursement Claim, Cal. Labor Code § 2802,**
**Brought by Plaintiff Melnicoe on Behalf of Himself and the Class)**

44. Plaintiff Melnicoe, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

45. At all relevant times, Lyft has been an employer, and Melnicoe and Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

46. The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 2802, which provides for the reimbursement of employee expenses incurred while carrying out their employment or to comply with employer requirements.

47. Lyft Drivers, including Melnicoe, have incurred and continue to incur expenses that include mileage costs, car insurance, cell phone service to perform their driving duties, receive driving requests, and maintain required email and/or text message contact with Lyft, car cleaning and repair to comply with Lyft requirements, and water, snacks, and/or other supplies for riders, among other expenses.

48. Lyft had a policy and practice of failing and refusing to reimburse Melnicoe and Class members for all of their work-related expenses and thus violated and continues to violate Labor Code § 2802.

49. Melnicoe , on behalf of himself and the Class members, seeks the amount of the respective unpaid expenses owed them, interest, attorneys' fees and costs pursuant to Labor Code § 2802(b) and (c), and such other legal and equitable relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (Expense Reimbursement Claim, Cal. Labor Code § 2802, Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)

50. Plaintiff Olson, on behalf of himself, the State of California, and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs, and particularly paragraphs 44-49 as to Aggrieved Employees, as if they were set forth again herein.

51. Olson, on behalf of the state of California and Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 558 and 2699, and attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
### (Overtime Claim, Cal. Labor Code §§ 510, 1194, 1198, and Wage Order 9, Brought by Plaintiff Melnicoe on Behalf of Himself and the Class)

52. Plaintiff Melnicoe, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

53. At all relevant times, Lyft has been an employer, and Melnicoe and Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

54. The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 510, 1194, 1198, and Wage Order 9, which require overtime pay for time worked over eight hours in a day or over 40 hours in a week.

55. Although Melnicoe and an identifiable portion of Class members periodically worked more than eight hours in a day or 40 hours in a week, Lyft had a policy and practice of failing and refusing to pay them overtime and thus violated and continues to violate the above-referenced overtime provisions of the Labor Code.

56. Melnicoe, on behalf of himself and the Class members, seeks the amount of the respective unpaid wages owed them, interest, attorneys' fees and costs pursuant to Cal. Labor Code § 1194, and such other legal and equitable relief as the Court deems just and proper.

- 11 -
Second Amended Class Action Complaint for Violations of Labor Code, UCL, and PAGA
Case No. CGC-18-566788

**FIFTH CLAIM FOR RELIEF**
**(Overtime Claim, Cal. Labor Code §§ 510, 1194, 1198, and Wage Order 9,**
**Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)**

57. Plaintiff Olson, on behalf of himself, the State of California, and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs, and particularly paragraphs 52-56 as to Aggrieved Employees, as if they were set forth again herein.

58. Olson, on behalf of the state of California and Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 558 and 2699, and attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Minimum Wage Claim, Cal. Labor Code**
**§§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9,**
**Brought by Plaintiff Melnicoe on Behalf of Himself and the Class)**

59. Plaintiff Melnicoe, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

60. At all relevant times, Lyft has been an employer, and Melnicoe and Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

61. The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9, which protect Melnicoe's and Class members' right to earn a minimum wage and provide for damages and punishment for violations of that right.

62. Although Melnicoe and an identifiable portion of Class members periodically did not earn minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wage for all hours worked and thus violated and continues to violate the above-referenced minimum wage protections of the Labor Code.

63. Melnicoe, on behalf of himself and the Class members, seeks the amount of the respective unpaid wages owed them, interest, liquidated damages, attorneys' fees and costs pursuant to Cal. Labor Code § 1194, and such other legal and equitable relief as the Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**(Minimum Wage Claim, Cal. Labor Code**
**§§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9,**
**Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)**

64.     Plaintiff Olson, on behalf of himself, the State of California, and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs, and particularly paragraphs 59-63 as to Aggrieved Employees, as if they were set forth again herein.

65.     Olson, on behalf of the state of California and the Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 1197.1 and 2699, and attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**(Wage Statement Claim, Cal. Labor Code § 226,**
**Brought by Plaintiff Melnicoe on Behalf of Himself and the Class)**

66.     Plaintiff Melnicoe, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

67.     At all relevant times, Lyft has been an employer, and Melnicoe and Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

68.     The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 226, which provides requirements for properly itemized wage statements.

69.     Lyft's wage statements do not clearly itemize hours worked, an hourly wage, overtime, or earnings in a way that Lyft Drivers can readily identify whether they received all applicable pay for which they were eligible.  Lyft thus violated and continues to violate California Labor Code § 226.

70.     Melnicoe, on behalf of himself and the Class members, seeks to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), as well as costs and attorneys' fees.

**NINTH CLAIM FOR RELIEF**
**(Wage Statement Claim, Cal. Labor Code § 226,**
**Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)**

71. Plaintiff Olson, on behalf of himself, the State of California, and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs, and particularly paragraphs 66-70 as to Aggrieved Employees, as if they were set forth again herein.

72. Olson, on behalf of the state of California and the Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 226.3 and 2699, as well as attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**(Meal and Rest Break Claim, Cal. Labor Code §§ 226.7, 512, and Wage Order 9,**
**Brought by Plaintiff Melnicoe on Behalf of Himself and the California Class)**

73. Plaintiff Melnicoe, on behalf of himself and all members of the California Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

74. At all relevant times, Lyft has been an employer, and Melnicoe and California Class members were, are, or will be employees under California law entitled to the protections of the California Labor Code.

75. The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 226.7, 512, and Wage Order 9, which provide for a 30-minute meal break for employees who work five hours or more in a day and for 10-minute breaks for every three and one-half hours worked.

76. Although Melnicoe and an identifiable portion of California Class members periodically worked four to five hours or more in a day, Lyft had a policy and practice of failing to provide lawful meal and rest breaks. Lyft thus violated and continues to violate the above-referenced meal and rest break provisions of the Labor Code.

77. Pursuant to Lyft's policy of classifying Lyft Drivers as independent contractors, Lyft lacks a meal or rest break policy that complies with California law. In the absence of such policies, and because Lyft's policies and practices incentivize Lyft Drivers to work constantly, Plaintiff and Lyft Drivers regularly work five or more hours in a day without taking an off-duty meal break and work more than three and one-half hours without taking an off-duty rest break. For example:

- Lyft queues up the next rider before the current rider is dropped off, therefore, Lyft Drivers must decline a rider request in order to log out for meal and rest breaks;
- Lyft penalizes Lyft Drivers for declining rider requests by lowering their acceptance rate, which must be 90% or better. If a Lyft Driver refuses too many rider requests, Lyft terminates the Driver's employment;
- To be eligible for Lyft's Power Driver Bonus and other incentive payments, Lyft Drivers must be online many hours a week (usually at least 50 per week), provide a certain number of rides, have an acceptance rate of 90% or higher, and/or remain online for long stretches during peak periods (usually for at least 50 minutes an hour). These policies discourage Lyft Drivers from taking meal and rest breaks.
- In addition, because Lyft has cut its prices in order to compete with other rideshare companies, Lyft Drivers must work much longer hours in order to make a living. This circumstance also strongly discourages Lyft Drivers from taking meal and rest breaks.

78. Melnicoe, on behalf of himself and the California Class members, seeks the amount of the respective pay owed him – one hour of compensation for each workday that the meal or rest period is not provided – interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**ELEVENTH CLAIM FOR RELIEF**
**(Meal and Rest Break Claim, Cal. Labor Code §§ 226.7, 512, and Wage Order 9, Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)**

79. Plaintiff Olson, on behalf of himself, the State of California, and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs, and particularly paragraphs 73-78 as to Aggrieved Employees, as if they were set forth again herein.

80. Olson, on behalf of the state of California and the Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 1197.1 and 2699, and attorneys' fees and costs.

**TWELFTH CLAIM FOR RELIEF**
**(Misclassification as an Independent Contractor—PAGA, Cal. Labor Code § 226.8, Brought by Plaintiff Olson on Behalf of Himself and Aggrieved Employees)**

81. Plaintiff Olson, on behalf of himself and all Aggrieved Employees, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

82. Pursuant to Labor Code § 226.8, it is unlawful for a person or employer to willfully misclassify an individual as an independent contractor.

83. As alleged herein, Lyft has continued to classify Olson and Lyft Drivers as independent contractors notwithstanding that its classification policy has been the subject of several lawsuits, at least one court decision concluding that a jury could reasonably find that Lyft Drivers are employees under California law, and the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, No. S222732, 2018 WL 1999120 (Apr. 30, 2018).

84. Lyft's refusal to reclassify Lyft Drivers as employees despite the substantial risk that its policy is unlawful is knowing and voluntary, and constitutes willful misclassification.

85. Lyft has engaged in a pattern or practice of misclassifying its drivers as independent contractors.

86. Olson, on behalf of the state of California and the Aggrieved Employees, seeks to recover the appropriate civil penalties set out in Labor Code §§ 226.8(b) and (c), attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs on behalf of themselves, all Class members, and all Aggrieved Employees, pray for relief as follows:

A. Certification of the Class;

B. Designation of Plaintiff Melnicoe as Representative of the Class;

C. Designation of Plaintiffs' counsel of record as Class Counsel for the Class;

D. A declaratory judgment that the practices complained of herein are unlawful;

E. An injunction against Lyft and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

F. Statutory penalties for Melnicoe and the Class;

G. An award of damages and restitution to be paid by Lyft according to proof for Melnicoe and the Class;

H. Appropriate civil penalties for Olson and Aggrieved Employees pursuant to Labor Code §§ 226.3, 226.8, 558, 1197.1, 2699, and 2802;

I. Pre-judgment and post-judgment interest, as provided by law;

J. Attorneys' fees, pursuant to Labor Code §§ 210, 218.5, 226(e), 512, 1194, 1198, 2802, Code of Civil Procedure § 1021.5, and all other bases for fees in the Labor Code;

K. Costs of suit, including expert fees and costs;

L. Appropriate service payments to Plaintiffs for their service as Class and PAGA representatives; and

M. Such other injunctive and equitable relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: October 5, 2018

Respectfully submitted,

By: /s/Jahan C. Sagafi
Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 227887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar No. 310594)
imattes@outtengolden.com
OUTTEN & GOLDEN LLP
One California St, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Michael J. Scimone*
mscimone@outtengolden.com
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
*pro hac vice application forthcoming

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 231-0037

*Counsel for Plaintiffs, Proposed Class Members, and Aggrieved Employees*

- 18 -
Second Amended Class Action Complaint for Violations of Labor Code, UCL, and PAGA
Case No. CGC-18-566788